## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 03 B 14242 |
|  | ) | Chapter 7 |
| CARL FRANK SZABO, | ) | Judge John H. Squires |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
| DAVID R. BROWN, Trustee for the Bankruptcy Estate of Carl Frank Szabo, | ) | Adv. No. 05 A 00988 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| FRANK SZABO, JR., INFRASTRUCTURE CONSTRUCTION SERVICES, LLC, an Illinois Limited Liability Company, and INFRASTRUCTURE CONSTRUCTION SERVICES, INC., an Illinois corporation, | ) | |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of David R. Brown, the Chapter 7 trustee (the "Trustee") of the estate of Carl Frank Szabo, for summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56 on his complaint against Frank Szabo, Jr. ("Frank, Jr."), Infrastructure Construction Services, LLC ("ICS, LLC"), and Infrastructure Construction Services, Inc. ("ICS, Inc.") (collectively, the "Defendants") to avoid an alleged fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1),

-2-

11 U.S.C. § 550(a), and 740 ILCS 160/6 of the Illinois Uniform Fraudulent Transfer Act.[1]

For the reasons set forth herein, the Court denies the Trustee's motion for summary judgment

under Counts I, II, and III of the complaint. However, the Court narrows the issues for trial

under Federal Rule of Civil Procedure 56(d). A pretrial conference is set for February 24,

2006 at 10:00 a.m. in Courtroom 2000, 505 North County Farm Road, Wheaton, Illinois.

## I.  JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and

Internal Operating Procedure 15(a) of the United States District Court for the Northern

District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (II), and (O).

## II.  APPLICABLE STANDARDS FOR SUMMARY JUDGMENT

In order to prevail on a motion for summary judgment, the movant must meet the

statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made

applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule

56(c) reads in part:

> The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show
> that there is no genuine issue as to any material fact and that
> the moving party is entitled to a judgment as a matter of law.

---

[1] Count IV of the complaint which seeks indemnification against Frank, Jr. is not the
subject of this motion for summary judgment.

-3-

Fed. R. Civ. P. 56(c). *See also Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1019 (7th Cir. 2003).

The primary purpose of granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990); *Farries v. Stanadyne/Chi. Div.*, 832 F.2d 374, 378 (7th Cir. 1987) (*quoting Wainwright Bank & Trust Co. v. Railroadmen's Fed. Savs. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986)). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998).

On a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (internal quotation omitted). Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir.) (internal quotation omitted), *cert. denied*, 126 S. Ct. 746 (2005).

In 1986, the United States Supreme Court decided a trilogy of cases that encourages the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 322; *Matsushita*, 475 U.S. at 585-86.

-4-

All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 666-67 (7th Cir. 2005); *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). The existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson*, 477 U.S. at 248; *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 815 (7th Cir. 2002). "'Factual disputes that are irrelevant or unnecessary will not be counted.'" *Fritcher*, 301 F.3d at 815 (*quoting Anderson*, 477 U.S. at 248). "[S]ummary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir. 1990). The Seventh Circuit has noted that trial courts must remain sensitive to fact issues where they are actually demonstrated to warrant denial of summary judgment. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1065-66 (7th Cir. 2000); *Szymanski v. Rite-Way Lawn Maint. Co.*, 231 F.3d 360, 364 (7th Cir. 2000).

The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (*quoting* Fed. R. Civ. P. 56(c)). Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings; rather, its response must show that there is a genuine issue for trial. *Anderson*,

-5-

477 U.S. at 248; *Celotex*, 477 U.S. at 323; *Matsushita*, 475 U.S. at 587; *Patrick v. Jasper County*, 901 F.2d 561, 565 (7th Cir. 1990). The manner in which this showing can be made depends upon which party will bear the burden of persuasion at trial. If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production either by submitting affirmative evidence that negates an essential element of the non-moving party's claim or by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *See Union Nat'l Bank of Marseilles v. Leigh (In re Leigh)*, 165 B.R. 203, 213 (Bankr. N.D. Ill. 1993).

Rule 56(d)[2] provides for the situation when judgment is not rendered upon the whole matter, but only a portion thereof. The relief sought pursuant to subsection (d) is styled partial summary judgment. Partial summary judgment is available to dispose of one or more

---

[2] Rule 56(d) provides that:

> If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Fed. R. Civ. P. 56(d).

-6-

counts of a complaint in their entirety. *Commonwealth Ins. Co. of N.Y. v. O. Henry Tent & Awning Co.*, 266 F.2d 200, 201 (7th Cir. 1959); *Biggins v. Oltmer Iron Works*, 154 F.2d 214, 216-17 (7th Cir. 1946); *Quintana v. Byrd*, 669 F. Supp. 849, 850 (N.D. Ill. 1987); *Strandell v. Jackson County, Ill.*, 648 F. Supp. 126, 136 (S.D. Ill. 1986); *Arado v. Gen. Fire Extinguisher Corp.*, 626 F. Supp. 506, 509 (N.D. Ill. 1985); *Capitol Records, Inc. v. Progress Record Distrib. Inc.*, 106 F.R.D. 25, 28 (N.D. Ill. 1985); *In re Network 90 Degrees, Inc.*, 98 B.R. 821, 831 (Bankr. N.D. Ill. 1989). Rule 56(d) provides a method whereby a court can narrow issues and facts for trial after denying in whole or in part a motion properly brought under Rule 56. *Capitol Records*, 106 F.R.D. at 29. In the case at bar, the Trustee effectively seeks partial summary judgment as his motion relates only to the first, second, and third counts of the complaint. The fourth count of the complaint under which the Trustee seeks indemnification was neither mentioned nor argued by the Trustee in this motion. Consequently, the motion must be construed as a motion for partial summary judgment.

Local Bankruptcy Rule 7056-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois, which deals with summary judgment motions, was modeled after LR56.1 of the Local Rules of the United States District Court for the Northern District of Illinois. Hence, the case law construing LR56.1 and its predecessor Local Rule 12 applies to Local Bankruptcy Rule 7056-1.

Pursuant to Local Bankruptcy Rule 7056, a motion for summary judgment imposes special procedural burdens on the parties. Specifically, the Rule requires the moving party to supplement its motion and supporting memorandum with a statement of undisputed material facts ("7056-1 statement"). The 7056-1 statement "shall consist of short numbered

paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." Local Bankr.R. 7056-1B.

The party opposing a summary judgment motion is required by Local Rule 7056-2 to respond ("7056-2 statement") to the movant's 7056-1 statement, paragraph by paragraph, and to set forth any material facts that would require denial of summary judgment, specifically referring to the record for support of each denial of fact. Local Bankr.R. 7056-2. The opposing party is required to respond "to each numbered paragraph in the moving party's statement" and to make "specific references to the affidavits, parts of the record, and other supporting materials relied upon[.]" Local Bankr.R. 7056-2A(2)(a). Most importantly, "[a]ll material facts set forth in the [7056-1] statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Bankr.R. 7056-2B.

In the instant matter, the Trustee filed a 7056-1 statement that complies with the Rule. It includes numbered paragraphs establishing undisputed facts with specific references to accompanying exhibits. In response, the Defendants filed a 7056-2 statement that substantially complies with Local Rule 7056-2A(2)(a).[3] They responded to each numbered

---

[3] In his reply memorandum in support of his motion for summary judgment, the Trustee asks the Court to strike the Defendants' 7056-2 statement because the doctrine of collateral estoppel bars them from raising any issues of fact that have already been adjudicated by the Court. The Court declines to grant the Trustee's request. The doctrine of collateral estoppel does not serve as a basis to strike a respondent's 7056-2 statement under Local Bankruptcy Rule 7056. See Local Bankr.R. 7056. Apparently, what the Trustee is attempting to argue is that if the Court finds that the Defendants are collaterally estopped

-8-

paragraph in the Trustee's 7056-1 statement. In addition, the Defendants submitted affidavits from Frank, Jr., James Christopher Szabo ("James"), Carl Frank Szabo ("Carl"), and Richard Bruns in support of their disagreement with some of the Trustee's alleged undisputed material facts. The Court will discuss these affidavits in greater detail in Section III *infra* of this Memorandum Opinion.

### III.  UNDISPUTED FACTS AND BACKGROUND

The following facts are undisputed. The Mountbatten Surety Company ("Mountbatten"), which is engaged in the insurance and surety business, wrote surety bonds for Szabo Contracting, Inc. ("Szabo Contracting"). (7056-1 statement ¶ 11 and Ex. H ¶ 8.) Frank, Jr. was an owner and officer of Szabo Contracting, which was in the business of installing sewer systems for municipalities. (7056-1 statement Ex. H ¶ 7.) Mountbatten bonded numerous Szabo Contracting projects. (7056-1 statement ¶ 11 and Ex. H ¶ 8.) Mountbatten entered into a General Agreement of Indemnity ("GAI") with James, Carl, and Frank, Jr., who all signed the GAI to indemnify Mountbatten for its losses. (7056-1 statement ¶ 11 and Ex. H ¶¶ 8 and 9; 7056-2 statement ¶ 11.) Frank, Jr. is the father of James and Carl.[4] (7056-1 statement Ex. H ¶ 10.)

---

from litigating the issues in the instant complaint, the factual disputes set forth in the 7056-2 statement cannot serve to defeat the motion for summary judgment. The Court agrees with this assertion and more fully discusses the doctrine of collateral estoppel and whether it should apply in the matter at bar in Section IV.A *infra* of the instant Memorandum Opinion.

[4] Frank, Jr. previously filed a Chapter 7 bankruptcy petition on August 6, 2001 and was granted a discharge on March 6, 2002. (7056-1 statement ¶ 10 and Exs. B(15)(e) and H ¶ 15; 7056-2 statement ¶ 10.)

-9-

On October 1, 1999, James and Carl formed a limited liability company known as ICS, LLC. (7056-1 statement Exs. B(10) and H ¶ 12.)[5] Frank, Jr. was involved in the business. (7056-1 statement Ex. H ¶ 12.) In 2000, Carl and James were the only members of ICS, LLC as shown on the United States partnership tax return for ICS, LLC. (*Id.* ¶ 14.) On October 12, 1999, Szabo Contracting made an assignment for the benefit of creditors. (*Id.* ¶ 13.) An involuntary bankruptcy petition was filed against Szabo Contracting in December of 1999. (*Id.*)

Around the same time, Mountbatten commenced litigation in Illinois state court against, *inter alia*, Frank, Jr., Carl, and James to enforce its indemnity rights. (7056-1 statement ¶ 12 and Ex. B(15)(b); 7056-2 statement ¶ 12.) On October 31, 2002, a judgment was entered in Mountbatten's favor and against, *inter alia*, James and Carl in the amount of $763,544.31. (7056-1 statement ¶ 12 and Exs. B(15)(b) and H ¶ 16; 7056-2 statement ¶ 12.) Thereafter, on March 7, 2003, another judgment was entered in favor of Mountbatten and against James and Carl in the sum of $592,298.46, for a total judgment in favor of Mountbatten of $1,355,842.77.[6] (7056-1 statement ¶ 12 and Exs. B(15)(b) and H ¶ 21; 7056-2 statement ¶ 12.)

---

[5] The manner in which the Trustee makes reference to the numerous documents that comprise Exhibit B to his 7056-1 statement is unnecessarily convoluted and difficult to follow. Rather than adopt the Trustee's references, the Court will refer to the documents within Exhibit B exclusively by number for the sake of clarity and simplicity.

[6] In his 7056-1 statement, the Trustee totals the two judgments obtained by Mountbatten and arrives at the figure of $1,361,842.70, which is arithmetically incorrect. (*See* 7056-1 statement ¶ 12.) Surprisingly, the Defendants do not dispute the Trustee's incorrect amount in their 7056-2 statement. (*See* 7056-2 statement ¶ 12.) Nevertheless, the Court can take judicial notice of the fact that the two judgments total $1,355,842.77 ($763,544.31 + $592,298.46 = $1,355,842.77), not $1,361,842.70.

-10-

In documents dated June 8, 2002, James and Carl expressed their intent to sell their interests in ICS, LLC to their father, Frank, Jr. for $500.00 each. (7056-1 statement ¶ 18 and Exs. B(7) (James), B(10)[7] (Carl), and H ¶ 18; 7056-2 statement ¶ 18.) Three documents were executed to effectuate the transfer of ICS, LLC's membership from James and Carl to Frank, Jr: (1) an intent to purchase dated June 8, 2002; (2) a transfer of membership interest dated June 30, 2002; and (3) a document entitled "Additional Concideration [sic] to Purchase Agreement" dated June 30, 2002. (7056-1 statement ¶ 18 and Exs. B(7-10) and H ¶ 18; 7056-2 statement ¶ 18.) The documents executed by Frank, Jr. and Carl were identical to the documents executed by Frank, Jr. and James. (*Id.*) William A. Sykora ("Sykora"), the accountant for ICS, LLC, testified that he drafted the first two documents, but not the third one. (7056-1 statement ¶ 19 and Ex. B(14) at 53-55, 69-71; 7056-2 statement ¶ 19.) Sykora further testified that the first two documents were prepared in November 2002, not in June. (7056-1 statement ¶ 19 and Ex. B(14) at 55-56; 7056-2 statement ¶ 19.) He stated that Frank, Jr. requested that he back-date the documents. (7056-1 statement ¶ 19.) The Defendants deny that Frank, Jr. requested that Sykora back-date the documents. (7056-1 statement Ex. H ¶ 20; 7056-2 statement ¶ 19.)

At the time of the transfer, ICS, LLC was profitable, servicing its debt, and not in default on any payments. (7056-1 statement ¶ 22 and Exs. B(4), (5), (11), (12), and (14) at 36 and 86-87; 7056-2 statement ¶ 22.) ICS, LLC transferred all of its assets to ICS, Inc. for no consideration. (7056-1 statement ¶ 23; 7056-2 statement ¶ 23.) On May 8, 2003, Frank,

---

[7]  The Court notes that the Trustee submitted an unsigned copy of the intent to purchase document between Carl as seller and Frank, Jr. as buyer. Nevertheless, the parties do not argue that this document was not properly executed by both Carl and Frank, Jr.

-11-

Jr. voluntarily dissolved ICS, LLC and formed ICS, Inc.  (7056-1 statement Exs. B(10) (Articles of Dissolution), B(15) (Articles of Incorporation), and H ¶ 23.)

On March 31, 2003, James and Carl each filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code.  (7056-1 statement ¶¶ 8 and 9 and Exs. B(15)(c) and (d) (James), F and G (Carl), and H ¶¶ 1 and 22; 7056-2 statement ¶¶ 8 and 9.)  On his statement of financial affairs filed in his bankruptcy case, James listed the transfer to Frank, Jr. of his interest in ICS, LLC in return for Frank, Jr.'s "assumption of secured indebtedness of Oxford Bank."  (7056-1 statement ¶ 13 and Ex. B(15)(d); 7056-2 statement ¶ 13.)  James identified the Oxford Bank debt on his Schedule H as one of which he was a co-debtor with his brother, Carl.  (*Id.*)  Similarly, on his statement of financial affairs filed in his bankruptcy case, Carl listed a transfer to Frank, Jr. of his interest in ICS, LLC in return for Frank, Jr.'s "assumption of secured indebtedness of Oxford Bank."  (7056-1 statement ¶ 14 and Ex. G; 7056-2 statement ¶ 14.)  The audited financial statements of ICS, LLC show that James's and Carl's equity in ICS, LLC was $333,500.00 each.[8]  (7056-1 statement ¶ 16 and Ex. B(4); 7056-2 statement ¶ 16.)

In 2004, the Trustee filed an adversary proceeding in James's bankruptcy case entitled *David R. Brown, Trustee for the Bankruptcy Estate of James Christopher Szabo v. Frank Szabo Jr., Infrastructure Construction Services, LLC, and Infrastructure Construction Services, Inc.*, Bankruptcy No. 03 B 14250, Adversary No. 04 A 03446 (the "James Adversary Proceeding").  (7056-1 statement ¶ 1 and Exs. B(15)(f) and D; 7056-2 statement

---

[8] According to Exhibit B(4), the "Members' Capital-Ending" figure for 2002 was $667,461.00. It is unclear how the Trustee arrived at the figure of $333,500.00 each for Carl and James.

·12·

¶ 1.) The Defendants in the James Adversary Proceeding–Frank, Jr., ICS, LLC, and ICS, Inc.–are the same defendants in the instant adversary proceeding. (*See* 7056-1 statement Exs. B(15)(f) and D.)   Similarly, the Trustee is the same plaintiff in the instant adversary proceeding and in the James Adversary Proceeding. (*See id.*)

The material factual allegations and causes of action against Frank, Jr., ICS, LLC, and ICS, Inc. in the James Adversary Proceeding are identical to the material factual allegations and causes of action in the instant adversary proceeding in that both complaints seek the recovery of the same assets transferred by Carl and James to Frank, Jr. (7056-1 statement ¶ 6 and Ex. D; 7056-2 statement ¶ 6.)

In the James Adversary Proceeding, the Defendants were represented by counsel at the prove-up hearing on April 8, 2005. (7056-1 statement ¶ 2 and Exs. A and C at 2; 7056-2 statement ¶ 2.) The Trustee filed pretrial submissions in the James Adversary Proceeding. (7056-1 statement ¶ 3 and Exs. A and C at 2; 7056-2 statement ¶ 3.) It is undisputed that the Defendants failed to file any pretrial submissions in the adversary proceeding. (7056-1 statement ¶ 4 and Exs. A and C at 2; 7056-2 statement ¶ 4.)

On April 27, 2005, following the hearing, the Court entered a judgment order in the James Adversary Proceeding (the "April 27, 2005 Order"). (7056-1 statement ¶ 1 and Ex. A; 7056-2 statement ¶ 1.) Pursuant to the April 27, 2005 Order, the Court admitted the Trustee's Exhibits 1-15 and 18-20 and took judicial notice of Exhibits B-H. (7056-1 statement ¶ 3 and Ex. A ¶ 4; 7056-2 statement ¶ 3.) The Order set forth detailed findings of fact after the Court considered the pretrial submissions of the Trustee, the arguments of both the Trustee and the Defendants through respective counsel, and the law. (7056-1

-13-

statement ¶ 5 and Ex. A; 7056-2 statement ¶ 5.)  All well-pleaded facts in the complaint filed

in the James Adversary Proceeding were deemed to be admitted by the Court.  (7056-1

statement ¶ 7 and Ex. A ¶ 1; 7056-2 statement ¶ 7.)

The Court found in the James Adversary Proceeding that the Trustee had proven, by

clear and convincing evidence, fraud in fact in the transfer of the interest in ICS, LLC from

James to Frank, Jr. based on the following: (1) the transfer was made between family

members within the year prior to the bankruptcy filing; (2) the transfer that Frank, Jr. sought

to back-date to 2001, but succeeded in back-dating to only June 2002, was made to hinder,

delay, and defraud creditors, specifically Mountbatten; (3) the transfer of the business was

undisclosed at the time of the transfer; (4) the transfer was made while substantial litigation

was pending against James, or after judgment in excess of $700,000.00 was entered in favor

of Mountbatten and against James and when his equity stake in ICS, LLC was imperiled; (5)

the transfer was for substantially all of James's assets; (6) the value given for the equity stake

was *de minimus* and not reasonably equivalent; and (7) the reasonable value of James's

equity that was transferred to Frank, Jr. was $330,000.00 at the time of the transfer based on

the audited financial statements of ICS, LLC.  (7056-1 statement ¶ 25 and Ex. A ¶¶ 20 and

23; 7056-2 statement ¶ 25.)[9]  In addition, the Court found that Frank, Jr. did not secure

_____

[9]  The Defendants dispute the Trustee's assertions in his 7056-1 statement that the
Court made findings in the April 27, 2005 Order regarding Carl's interest in ICS, LLC and
his transfer of that interest to Frank, Jr. Specifically, the Defendants dispute that the transfer
was for a substantial portion of Carl's assets and that the Trustee had proven, by clear and
convincing evidence, fraud in fact in the transfer of the interest in ICS, LLC from Carl to
Frank, Jr. (*See* 7056-1 statement ¶ 25(d), (e), and (g).)  The Court agrees with the
Defendants.  The Court made no findings in that Order with respect to Carl.  Rather, the
Order made reference only to James and his interest in ICS, LLC and the transfer of that
interest to Frank, Jr. Further, the April 27, 2005 Order did not state that the Trustee proved

-14-

James's release from James's guarantee of the Oxford Bank debt. (7056-1 statement ¶ 17 and Ex. A ¶ 11; 7056-2 statement ¶ 17.) Moreover, the Court noted that the proceeds of the sale of James's home on Tee Road in Bloomingdale, Illinois, were paid to Oxford Bank in order to satisfy ICS, LLC's debt. (*Id.*)

The Court also found in the April 27, 2005 Order that the Trustee demonstrated fraud in law under the Illinois Uniform Fraudulent Transfer Act. (7056-1 statement Ex. A ¶ 22.) Specifically, the Court stated that at the time of the transfer, James was not able to pay the Mountbatten judgment entered against him. (*Id.*) In addition, the Court found that James's financial statement of December 31, 2001, when amended to reflect the Mountbatten judgment, indicated that James was insolvent. (*Id.*)[10]

The Court entered judgment in favor of the Trustee and against Frank, Jr. on Count I of the complaint in the sum of $330,000.00 under 11 U.S.C. § 548(a)(1)(A) and (B), 11 U.S.C. § 550(a)(1), and 740 ILCS 160[11] of the Illinois Uniform Fraudulent Transfer Act. (7056-1 statement Ex. A at 7.) The Court also entered judgment in favor of the Trustee and against ICS, Inc. in the sum of $330,000.00 under 11 U.S.C. § 550(a)(1) and (2) and 740 ILCS 160.[12] (*Id.*) Judgment was not entered against ICS, LLC. Finally, the Trustee

---

fraud in fact against Carl by clear and convincing evidence.

[10] Paragraph 22 of the April 27, 2005 Order erroneously references the "Defendant's" financial statement as of December 31, 2001 and checking account statements from November and December of 2002. It appears that those references in that Order should be to the "Debtor," James, not the Defendants, Frank, Jr., ICS, LLC, and ICS, Inc.

[11] The April 27, 2005 Order did not specify the exact subsection of 740 ILCS 160 under which the Court entered judgment in favor of the Trustee.

[12] *See* note 10 *supra.*

·15·

withdrew Count IV of the complaint, which was a cause of action for indemnification against Frank, Jr.

The instant four-count complaint was filed by the Trustee on March 30, 2005. (7056-1 statement Ex. E.) Therein, the Trustee alleges that Carl transferred his interest in ICS, LLC to Frank, Jr. in a transaction that mirrors the transfer of his brother James's equal interest in ICS, LLC to Frank, Jr., in violation of 11 U.S.C. § 548(a)(1), 11 U.S.C. § 550(a), and the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/6. (*Id.*) In addition, the fourth count of the complaint seeks indemnification against Frank, Jr.[13] (*Id.*) Pursuant to Count IV of the complaint, the Trustee alleges that Carl's real property in Bloomingdale, Illinois, was sold in 2003 and that the proceeds were applied by Oxford Bank to pay the indebtedness of ICS, LLC pursuant to Carl's guaranty of ICS, LLC's debt to Oxford Bank. (*Id.* ¶ 41.) The Trustee contends that if the Court finds that Frank, Jr. gave a valid indemnification agreement to Carl in exchange for the ICS, LLC membership interest, Frank, Jr. should pay Carl's estate the value of the monies used from the sale of Carl's real property to pay ICS, LLC's debt. (*Id.* ¶ 42.)

---

[13] The Trustee withdrew this count of the complaint in the James Adversary Proceeding. However, in the complaint at bar, he has not withdrawn the indemnification count. Nevertheless, the Trustee fails to mention Count IV of the complaint in his motion for summary judgment.

·16·

## IV. DISCUSSION

### A.    Collateral Estoppel

In the instant motion for summary judgment, the Trustee seeks to utilize the doctrine

of collateral estoppel to preclude the Defendants in this adversary proceeding from disputing

any material issues of fact and from asserting any defenses based upon the findings made in

the April 27, 2005 Order in the James Adversary Proceeding.  "Collateral estoppel . . . has

the dual purpose of protecting litigants from the burden of relitigating an identical issue with

the same party or his privy and of promoting judicial economy by preventing needless

litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).  The doctrine of

collateral estoppel precludes the relitigation of issues previously determined in another court.

*Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979); *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir.

2002) (finding that collateral estoppel "prevents a party from relitigating an issue that it has

previously litigated and lost").  Four requirements must be met to invoke the doctrine of

collateral estoppel: (1) the issue sought to be precluded is the same as that involved in a prior

action; (2) the issue was actually litigated; (3) the determination of the issue was essential

to the final judgment; and (4) the party against whom estoppel is invoked was represented

in the prior action. *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000); *Havoco of Am., Ltd.*

*v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 307 (7th Cir. 1995).  Because issue

preclusion is an affirmative defense, the party seeking to invoke the doctrine has the burden

of satisfying each of these elements. *Adair*, 230 F.3d at 894.  "Under collateral estoppel,

once an issue is actually and necessarily determined by a court of competent jurisdiction, that

determination is conclusive in subsequent suits based on a different cause of action involving

-17-

a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). Because this matter presents a question regarding the collateral estoppel effect of the April 27, 2005 Order, the Court must apply the federal law standards of collateral estoppel. *See In re Catt*, 368 F.3d 789, 790-91 (7th Cir. 2004) ("The effect of a judgment in subsequent litigation is determined by the law of the jurisdiction that rendered the judgment. . . .").

The Court finds that the Trustee has demonstrated some but not all of the requisite elements for the application of the doctrine of collateral estoppel. First, the Trustee has not shown that the issues sought to be precluded are the same issues that were involved in the prior action. "Whether the issues are identical is a question of law." *E.B. Harper & Co. v. Nortek, Inc.*, 104 F.3d 913, 922 (7th Cir. 1997). The Court finds that not all of the issues in the James Adversary Proceeding are identical to the issues in this instant adversary proceeding, namely whether Carl transferred his interest in ICS, LLC to Frank, Jr. in violation of 11 U.S.C. § 548(a)(1), 11 U.S.C. § 550(a), and the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/6.

It is undisputed that the material factual allegations and causes of action against Frank, Jr., ICS, LLC, and ICS, Inc. in the James Adversary Proceeding are identical to the material factual allegations and causes of action in the instant adversary proceeding in that both complaints seek the recovery of the same assets transferred by Carl and James to Frank, Jr.[14] (7056-1 statement ¶ 6 and Ex. D; 7056-2 statement ¶ 6.) Specifically, both Carl and

---

[14] The only difference between the James Adversary Proceeding and the instant adversary proceeding is that the Trustee withdrew Count IV (indemnification) of the complaint in the James Adversary Proceeding and has not withdrawn that count in the complaint at bar.

-18-

James entered into similar transactions at the same time to sell their respective interests in

ICS, LLC to their father, Frank, Jr. (7056-1 statement ¶ 18 and Exs. B(7-10) and H ¶ 18;

7056-2 statement ¶ 18.) Carl and James listed the transfers of their respective interests in

ICS, LLC to Frank, Jr. as pre-petition transfers on their statements of financial affairs.

(7056-1 statement ¶¶ 13 and 14 and Exs. B(15)(d) and G; 7056-2 statement ¶¶ 13 and 14.)

Further, both Carl's and James's interests in ICS, LLC were allegedly transferred for $500.00

each. (7056-1 statement ¶ 18 and Exs. B(7), B(10), and H ¶ 18; 7056-2 statement ¶ 18.)

Moreover, the transfers of their respective interests in ICS, LLC were memorialized in

documentation that was identical. (7056-1 statement ¶ 18 and Exs. B(7-10) and H ¶ 18;

7056-2 statement ¶ 18.)

Nevertheless, the issues in the James Adversary Proceeding are not the same as those

in the complaint at bar. The transferors of the ICS, LLC interests, James and Carl, are

different people. Moreover, the issue of whether the transfer by Carl to Frank, Jr. was for

a substantial portion of Carl's assets is different from the issue of whether the transfer by

James to Frank, Jr. was for a substantial portion of James's assets. In addition, the issue of

whether Carl was insolvent or became insolvent at the time of the transfer to Frank, Jr. is

distinct from the issue of whether James was insolvent or became insolvent at the time of his

transfer to Frank, Jr. Thus, the Court finds that not all of the issues sought to be precluded

in the instant adversary proceeding involving Carl are the same issues that were involved in

the James Adversary Proceeding.

Next, the Trustee must show that the issues at bar were actually litigated and decided.

This element has resulted in much discord among the parties. The Trustee contends that the

·19·

April 27, 2005 Order was not a default judgment because the Defendants were afforded the opportunity to submit evidence but failed to do so. The Trustee also argues that even if the Court were to construe the April 27, 2005 Order as a default judgment, the "actually litigated" element has been met because the Court entered detailed findings based on the record before it. The Defendants, on the other hand, contend that the April 27, 2005 Order was a default judgment against them and that, thus, pursuant to the case law in the Seventh Circuit, the issues were not litigated and the doctrine of collateral estoppel does not apply. In addition, the Defendants argue that to apply collateral estoppel to this adversary proceeding would create a manifest injustice because they were denied the opportunity in the James Adversary Proceeding to present any evidence. The Court will address each point in turn.

Initially, the Court rejects the Trustee's argument that the April 27, 2005 Order was not a default judgment against the Defendants. A brief history of the facts that led to the entry of the April 27, 2005 Order can help to elucidate this issue. Pursuant to Federal Rule of Bankruptcy Procedure 7055(a), the Court entered a default against the Defendants for their failure to answer the complaint in the James Adversary Proceeding. The Defendants sought to vacate the default, but the Court denied that motion. Thereafter, the Court entered a pretrial order for the prove-up hearing on damages scheduled for April 8, 2005.[15] That

---

[15] Before the entry of a default judgment, Federal Rule of Civil Procedure 55(b)(2) provides for the court "as it deems necessary and proper," to conduct an evidentiary proceeding to determine the proper amount of damages. Fed. R. Civ. P. 55(b)(2). Such a proceeding is required "unless the amount claimed is liquidated or capable of ascertainment from definite figures contained in documentary evidence or detailed affidavits." *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1404 (7th Cir. 1993) (internal quotation omitted).

-20-

pretrial order afforded the Defendants the opportunity to submit evidence, including exhibits,
a list of witnesses, and proposed findings of fact and conclusions of law, as well as
objections to any submissions made by the Trustee. Notwithstanding the opportunity to
submit evidence, the Defendants failed to file any pretrial submissions. In addition, the
Defendants made no objections to the pretrial submissions offered by the Trustee. The
Defendants' attorney appeared at the prove-up hearing and made oral argument against the
evidence and relief requested by the Trustee.

After considering the evidence proffered by the Trustee and the oral arguments made
by counsel for both the Trustee and the Defendants, the Court made detailed factual findings
and conclusions of law and entered the April 27, 2005 Order. In the first paragraph of that
Order, the Court recites that the matter was before the Court "for hearing on the prove up of
the complaint upon the default of the [D]efendants. . . ." (7056-1 statement Ex. A at 1.)
Based upon this language, as well as the fact that the Court entered a default against the
Defendants for their failure to answer the complaint, the Court finds that the April 27, 2005
Order constituted a default judgment entered against the Defendants.[16]

Next, the Defendants argue that they were denied the opportunity to appear at the
prove-up hearing because the Trustee issued trial subpoenas that incorrectly identified the
location of the hearing. The Defendants specifically contend that their appearance at the
courthouse in Chicago, while the prove-up hearing took place at the courthouse in Wheaton,

---

[16] In general, a default judgment has the effect of establishing a defendant's liability
as a matter of law for each well-pleaded allegation of a complaint. *United States v. DiMucci*,
879 F.2d 1488, 1497 (7th Cir. 1989); *Dundee Cement Co. v. Howard Pipe & Concrete Prods.,
Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

-21-

denied them the opportunity to offer testimony to rebut the Trustee's evidence. According to the Defendants, to apply the doctrine of collateral estoppel and prevent them from offering evidence to rebut the allegations contained in the instant complaint would be manifestly unjust.

Notwithstanding the substance of the Defendants' contention regarding the Trustee's inaccurate subpoenas, that argument should have been made in the James Adversary Proceeding. It is wholly inappropriate for the Defendants to make this argument in this adversary proceeding. If the Defendants believed that the inaccurate subpoenas denied them the opportunity to present evidence, they should have filed an appeal of the April 27, 2005 Order. Indeed, the Defendants did not take an appeal of that Order in the James Adversary Proceeding. The Court will not act as its own appellate court reviewing the propriety of the April 27, 2005 Order. Thus, the Court will not address that issue in this adversary proceeding.

Moreover, the Court rejects the Defendants' argument that their failure to appear at the prove-up hearing denied them an opportunity to present evidence. The Defendants did not make any submissions pursuant to the Court's pretrial order. That fact alone would have prevented them from proffering any evidence at the prove-up hearing had they appeared. *See In re Maurice*, 21 F.3d 767, 773 (7th Cir. 1994) (holding that a court may, as a sanction for failure to comply with a pretrial order, prevent a party from offering any evidence at trial). The Defendants, like the Trustee, were afforded an opportunity to submit their evidence prior to the prove-up hearing and failed to do so. The Court did not enter the April 27, 2005 Order without first affording the Defendants the opportunity to participate in the hearing via the

·22·

pretrial order. The failure of a defendant to attend a trial does not prevent issue preclusion

in a subsequent action, as long as the prior action was actually litigated in the defendant's

absence. *Eveland v. Stelbrink (In re Stelbrink)*, 331 B.R. 790, 793 (Bankr. C.D. Ill. 2005).

This brings the discussion back to whether the issues in the James Adversary

Proceeding were "actually litigated." The general rule in the Seventh Circuit is that "a

default judgment is not a proper basis for collateral estoppel," *Grip-Pak, Inc. v. Ill. Tool

Works, Inc.*, 694 F.2d 466, 469 (7th Cir. 1982), because no issue was "actually litigated" in

the earlier proceeding, *Catt*, 368 F.3d at 792; *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir.

1994); *In re Cassidy*, 892 F.2d 637, 640 n.1 (7th Cir. 1990); *see also Walker v.

Contimortgage (In re Walker)*, 232 B.R. 725, 732-33 (Bankr. N.D. Ill. 1999).[17] Based upon

the clear pronouncement from the Seventh Circuit that default judgments do not satisfy the

"actually litigated" requirement for the application of collateral estoppel, the Court finds that

the issues in the James Adversary Proceeding were not actually litigated.

---

[17] The Trustee failed to cite to any of the controlling Seventh Circuit precedent regarding the inapplicability of the doctrine of collateral estoppel to default judgments. Instead, the Trustee relies on a decision authored by this Court in *Katahn Associates., Inc. v. Wien (In re Wien)*, 155 B.R. 479 (Bankr. N.D. Ill. 1993). The Trustee argues that the situation at bar is similar to the one in *Wien*. In the *Wien* case, the Court applied the doctrine of collateral estoppel to a judgment that was entered based on an uncontested summary judgment motion. *Id.* at 487. Specifically, the Court found that the "actually litigated" requirement was met because detailed findings of fact from the earlier proceeding enabled the Court in a subsequent proceeding to determine which facts were actually proven, which issues were decided, and what was essential to the other court's judgment. *Id.* at 484-86.

The facts in the *Wien* case are distinguishable from those at bar. As the Court aptly noted in *Wien* and the Trustee conveniently fails to point out, "[t]he summary judgment entered was not the functional equivalent of a default judgment entered against an unrepresented defendant who never appeared." *Id.* at 486. Thus, *Wien* lends little support to the Trustee's position, and his reliance on that case is misplaced.

-23-

There exists an exception to the general rule that collateral estoppel does not apply to a default judgment. Although it is rare that a default judgment will be given collateral estoppel effect, when "it can be said that the parties could reasonably have foreseen the conclusive effect of their actions," collateral estoppel may apply. *Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987) (internal quotation omitted); *accord La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 906 (7th Cir. 1990). The Court finds that the record before it is inadequate to determine whether the Defendants "could reasonably have foreseen the conclusive effect of their actions." *See Klingman*, 831 F.2d at 1296. The Trustee proffered no evidence to show that the Defendants were able to foresee the preclusive effect of allowing a default judgment to be entered against them in the James Adversary Proceeding. Indeed, the Defendants argue that the default was the result of their attorney's "shockingly inadequate" representation of them.

In short, based upon the Seventh Circuit's general rule that a default judgment is not a proper basis for application of collateral estoppel and the fact that the record is devoid of any evidence that the Defendants were able to reasonably foresee the preclusive effect of the default judgment, the Court finds that the Trustee has not established that the issues in the James Adversary Proceeding were actually litigated.

Third, the Trustee must show that the determination of the issues was essential to the final judgment in the prior proceeding. Both Carl and James are co-debtors for the same obligation and were involved in similar transactions. The same material allegations that were made in the James Adversary Proceeding in his bankruptcy case are made in this adversary proceeding in Carl's bankruptcy case. The same events and transactions that provide the

-24-

factual basis for the Trustee's contention here that Carl transferred his interest in ICS, LLC

to Frank, Jr. were essential to the Court's determination of the issues in the James Adversary

Proceeding wherein James transferred his interest in ICS, LLC to Frank, Jr. Thus, the

determination of the issues in the earlier proceeding were essential to the final judgment

entered there and, thus, this element has been satisfied.

The final requirement for the application of collateral estoppel has also been met: the

Defendants were represented by counsel in the James Adversary Proceeding. Counsel for

the Defendants appeared at the prove-up hearing and made oral argument before the Court.

In addition, the Defendants' attorney filed motions to vacate both the default and the default

judgment embodied in the April 27, 2005 Order entered in that prior proceeding. The

Defendants do not contest that they were in fact represented by counsel in the earlier

proceeding. What the Defendants do argue, however, is that this element has not been met

because the representation they received from their attorney in the earlier proceeding was

"shockingly inadequate." Specifically, they point to their attorney's failure to answer the

complaint filed in the James Adversary Proceeding, as well as her failure to file any pretrial

submissions for the prove-up hearing pursuant to the Court's order.

Unfortunately for the Defendants, their complaints about the adequacy of their

attorney's representation do not serve to negate the fact that they were indeed represented by

counsel. That the Defendants believe that the legal representation they received from their

counsel was less than adequate is a matter for another time and forum. The Defendants

failed to cite any case authority in support of their suggestion that the alleged inadequate

representation constitutes a complete lack of representation for purposes of collateral

·25·

estoppel. Moreover, their dissatisfaction with the caliber of legal representation they received does not serve to defeat the final element for the application of collateral estoppel that they were represented by counsel in the earlier proceeding. Thus, the Court finds that the Defendants were represented by counsel in the prior action and that this element has been demonstrated by the Trustee.

In sum, the Court finds that the Trustee has not established all elements necessary for the application of the doctrine of collateral estoppel. Therefore, the default judgment entered in the James Adversary Proceeding does not preclude the Defendants in this adversary proceeding from raising disputed issues of fact or defenses to the Trustee's complaint. The Court will now address each count of the Trustee's complaint and decide whether he is entitled to summary judgment under those counts.

## B.  The Trustee's Complaint

### 1.  Count I: 11 U.S.C. § 548(a)(1)

Pursuant to Count I of the complaint, the Trustee seeks to avoid the transfer of Carl's interest in ICS, LLC to Frank, Jr. as fraudulent under 11 U.S.C. § 548(a)(1). Specifically, the Trustee alleges that Carl transferred his membership interest in ICS, LLC with actual intent to hinder, delay, or defraud his creditors, including Mountbatten. (7056-1 statement Ex. E ¶ 27.) Further, the Trustee contends that Carl received less than a reasonably equivalent value in exchange for the transfer of his interest in ICS, LLC. (*Id.* ¶ 28.) Additionally, according to the Trustee, Carl was engaged in business or a transaction or was about to engage in business or a transaction for which any property remaining with him was an unreasonably small capital. (*Id.* ¶ 29.) Finally, the Trustee contends that Carl was

-26-

involved in litigation with Mountbatten at the time of the transfer and was not able to pay his

debts as they became due. (*Id.* ¶ 30.)

"Fraudulent conveyance law protects creditors from last-minute diminutions of the

pool of assets in which they have interests." *Bonded Fin. Servs., Inc. v. European Am. Bank*,

838 F.2d 890, 892 (7th Cir. 1988). Section 548(a)(1) of the Bankruptcy Code provides as

follows:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in
property, or any obligation incurred by the debtor, that was made or
incurred on or within one year before the date of the filing of the
petition, if the debtor voluntarily or involuntarily—

    (A)    made such transfer or incurred such obligation with actual
intent to hinder, delay, or defraud any entity to which the
debtor was or became, on or after the date that such transfer
was made or such obligation was incurred, indebted; or

    (B)    (i) received less than a reasonably equivalent value in
exchange for such transfer or obligation; and

            (ii)    (I)    was insolvent on the date that such transfer
was made or such obligation was incurred, or
became insolvent as a result of such transfer
or obligation;

                    (II)    was engaged in business or a transaction, or
was about to engage in business or a
transaction, for which any property remaining
with the debtor was an unreasonably small
capital; or

                    (III)    intended to incur, or believed that the debtor
would incur, debts that would be beyond the
debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(1).

-27-

The cause of action under § 548(a)(1)(A) is commonly referred to as "actual fraud"

because of the element of the debtor's actual intention to hinder, delay, or defraud creditors.

*In re FBN Food Servs., Inc.*, 82 F.3d 1387, 1394 (7th Cir. 1996). The cause of action under

§ 548(a)(1)(B) is often referred to as "constructive fraud" because it omits any element of

intent. *Id.* One decision has described the differences between the two causes of action

under § 548(a)(1):

> The focus in the inquiry into actual intent is on the
> state of mind of the debtor. Neither malice nor insolvency
> [is] required. Culpability of the part of the . . . transferees is
> not essential.
> Unlike constructively fraudulent transfers, the
> adequacy or equivalence of consideration provided for the
> actually fraudulent transfer is not material to the question
> whether the transfer is actually fraudulent. . . . Conversely,
> the transferor's intent is immaterial to the constructively
> fraudulent transfer in which the issue is the equivalence of the
> consideration coupled with either insolvency, or inadequacy
> of remaining capital, or inability to pay debts as they mature.

*In re Cohen*, 199 B.R. 709, 716-17 (B.A.P. 9th Cir. 1996). Here, the Trustee alleges both

actual fraud under § 548(a)(1)(A) and constructive fraud under § 548(a)(1)(B).

Badges of fraud, the existence of which can be used to infer actual intent to defraud

under § 548(a)(1)(A), include the following: (1) absconding with the proceeds of the transfer

immediately after their receipt; (2) absence of consideration when the transferor and

transferee know that outstanding creditors will not be paid; (3) a huge disparity in value

between the property transferred and the consideration received; (4) the fact that the

transferee is or was an officer, agent, or creditor of an officer of the corporate transferor; (5)

insolvency of the debtor; and (6) the existence of a special relationship between the debtor

·28·

and the transferee. *Carmel v. River Bank Am. (In re FBN Food Servs., Inc.)*, 185 B.R. 265, 275 (N.D. Ill. 1995), *aff'd*, 82 F.3d 1387 (7th Cir. 1996).

In order for a trustee to establish a fraudulent conveyance under § 548(a)(1)(B), he must prove the following elements: (1) a transfer of the debtor's property or interest therein; (2) made within one year of the filing of the bankruptcy petition; (3) for which the debtor received less than a reasonably equivalent value in exchange for the transfer; and (4) either (a) the debtor was insolvent when the transfer was made or was rendered insolvent thereby; or (b) the debtor was engaged or about to become engaged in business or a transaction for which its remaining property represented an unreasonably small capital; or (c) the debtor intended to incur debts beyond its ability to repay them as they matured. *Dunham v. Kisak*, 192 F.3d 1104, 1109 (7th Cir. 1999); *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 505 (N.D. Ill. 1988); *Barber v. Dunbar (In re Dunbar)*, 313 B.R. 430, 434 (Bankr. C.D. Ill. 2004). The trustee must prove each element by a preponderance of the evidence. *Frierdich v. Mottaz*, 294 F.3d 864, 867 (7th Cir. 2002); *Baldi v. Lynch (In re McCook Metals, L.L.C.)*, 319 B.R. 570, 587 (Bankr. N.D. Ill. 2005).

The Defendants dispute the following assertions made by the Trustee in the complaint: (1) that the only consideration for the transfer of Carl's interest in ICS, LLC was $500.00 (7056-2 statement ¶ 15); (2) that the documents relating to the transfer were back-dated to June 2002 (7056-2 statement ¶ 19); (3) that the transfer of Carl's ICS, LLC interest was undisclosed at the time of the transfer (7056-2 statement ¶ 25); (4) that the transfer was for a substantial portion of Carl's assets (*id.*); (5) that the transfer was given in exchange for *de minimus* value not reasonably equivalent to the value of the ICS, LLC interest (7056-2

statement ¶¶ 20 and 24); (6) that the equity indicated in the financial statements and tax returns of ICS, LLC properly reflect the members' interest (7056-2 statement ¶ 21); and (7) that the transfer was made with intent to hinder, delay, or defraud creditors (7056-1 statement Ex. H ¶ 27).

Specifically, the Defendants have proffered several affidavits to dispute many of the Trustee's allegations. First, in his affidavit, Frank, Jr. states that he agreed to purchase James's and Carl's interests in ICS, LLC for $500.00 each. (Defs. Ex. A ¶ 7.) He also avers that he agreed to obtain within one year the release of all personal guarantees and indemnifications signed on behalf of ICS, LLC by James, Carl, and their wives. (*Id.*) Further, Frank Jr. asserts that the transfer of the ICS, LLC interests was not done with any intent to defraud, impair or delay creditors. (*Id.* ¶ 12.) Additionally, Frank, Jr. states that Sykora did not prepare the transfer documents in November of 2002 and that he did not ask Sykora to back-date those documents. (*Id.* ¶ 10.) Finally, he contends that Sykora substantially overstated the equity that James and Carl had in ICS, LLC on the financial statements and tax returns, attributing that overstatement to an acrimonious relationship among the parties. (*Id.* ¶¶ 10 and 14.)

James also executed an affidavit in response to the Trustee's motion for summary judgment. (Defs. Ex. B.) James states that on June 30, 2002, he transferred his interest in ICS, LLC to Frank, Jr. in exchange for the sum of $500.00. (*Id.* ¶ 5.) According to James, as additional consideration for his transfer, Frank, Jr. agreed to obtain James's and his wife's release from any personal guarantees and indemnifications entered into by them on behalf

·30·

of ICS, LLC. (*Id.*) Further, James avers that he did not ask Sykora or anyone else to back-date the documents evidencing the transfer of his interest in ICS, LLC to Frank, Jr. (*Id.* ¶ 7.)

Carl's affidavit is identical to the one submitted by James except that it contains an additional paragraph. (Defs. Ex. C.) Carl avers that at the time of the transfer of his interest in ICS, LLC to Frank, Jr., ICS, LLC was having difficulty collecting on its receivables and was not profitable. (*Id.* ¶ 10.) Additionally, Carl states that he did not believe that ICS, LLC would operate profitably in the future as a result of unpaid receivables and ongoing problems related to existing projects. (*Id.*)

The final affidavit submitted by the Defendants is that of Richard Bruns ("Bruns"). (Defs. Ex. D.) Bruns is a certified public accountant with the firm of Bruns & Bruns. (*Id.* ¶ 2.) According to Bruns, Frank, Jr. employed him to review the tax returns and financial statements of ICS, LLC for the years 2002 and 2003. (*Id.* ¶ 3.) Bruns states that he reviewed ICS, LLC's income tax return for the year 2002, as well as the financial statements as of December 31, 2002, which were prepared by Sykora. (*Id.* ¶ 4.) In his professional opinion, Bruns avers that the documents prepared by Sykora substantially overstate ICS, LLC's profit and, therefore, the members' equity. (*Id.* ¶ 7.) After performing an analysis of these documents, Bruns concludes that the members' equity in ICS, LLC for 2002 was overstated by $272,507.00 as a result of Sykora's errors. (*Id.* ¶ 9.) Additionally, according to Bruns, Sykora inflated the members' equity by overstating ICS, LLC's accounts receivables. (*Id.* ¶ 10.) Further, Bruns states that Sykora incorrectly included in the equity calculation a personal line of credit in the sum of $35,881.00. (*Id.* ¶ 11.) Bruns avers that because a loan was never made, this figure should not have been reflected in the equity calculation. (*Id.*)

-31-

Moreover, Bruns contends that certain items of equipment that were allegedly purchased in 1999 were reflected on the depreciation schedule even though these items were not in fact ever purchased. (*Id.* ¶ 12.) According to Bruns, if those items were not purchased, Sykora overstated the members' equity in ICS, LLC by $35,881.00. (*Id.*) In sum, Bruns concludes that Sykora overstated the members' equity in total by no less than $522,806.00, excluding the overstatement with respect to the equipment purchase. (*Id.* ¶ 13.) With the equipment purchased factored in, however, Bruns states that Sykora overstated the members' equity by no less than $558,687.00. (*Id.*)[18]

After reviewing the parties' submissions, the Court finds that material issues of disputed fact exist with respect to several requisite elements under § 548(a), namely: (1) whether Carl transferred his interest in ICS, LLC to Frank, Jr. with the intent to hinder, delay, or defraud his creditors; (2) whether Carl received less than a reasonably equivalent value in exchange for the transfer; (3) whether Carl was insolvent when the transfer was made or was rendered insolvent thereby; (4) whether Carl was engaged or about to become engaged in business or a transaction for which his remaining property represented an unreasonably small capital; and (5) whether Carl intended to incur debts beyond his ability to repay them as they matured. Accordingly, the Trustee has not demonstrated all of the necessary elements under § 548(a) and, therefore, is not entitled to summary judgment as a matter of law with respect to Count I of the complaint.

---

[18] The Court notes that the individual figures cited by Bruns do not arithmetically total the sums at which he arrives. Nevertheless, the Court has accurately summarized his affidavit testimony.

-32-

## 2.    Count II: 11 U.S.C. § 550(a)

Pursuant to Count II of the complaint, the Trustee seeks a judgment in his favor and

an order directing Frank, Jr. and ICS, Inc. to return to the Trustee all ICS, LLC property that

was transferred or the value of such property pursuant to 11 U.S.C. § 550(a).  (7056-1

statement Ex. E at 6-7.)  When a transfer is avoided under § 548(a), the next step is to look

to § 550(a).  Section 550(a) sets forth the parties from whom fraudulent transfers can be

recovered and provides as follows:

> (a) Except as otherwise provided in this section, to the extent
> that a transfer is avoided under section . . . 548 . . . of this
> title, the trustee may recover, for the benefit of the estate, the
> property transferred, or, if the court so orders, the value of
> such property, from–
>
> > (1) the initial transferee of such transfer or the
> > entity for whose benefit such transfer was
> > made; or
> >
> > (2) any immediate or mediate transferee of
> > such initial transferee.

11 U.S.C. § 550(a).

Section 550(a) effectively limits actions to only those that benefit the estate.  *P.A.*

*Bergner & Co. v. Bank One Milwaukee, N.A. (In re P.A. Bergner & Co.)*, 140 F.3d 1111,

1118 (7th Cir. 1998); *Kmart Corp. v. Intercraft Co. (In re Kmart Corp.)*, 310 B.R. 107, 126

(Bankr. N.D. Ill. 2004).  Section 550 allows the trustee to recover the entire value of the

property transferred, even if it exceeds the debt to the creditor that provided the basis for the

action.  *Kleven v. Stewart (In re Myers)*, 320 B.R. 667, 670 (Bankr. N.D. Ind. 2005).  Even

though an action to avoid a transfer may be, and often is, brought in conjunction with an

-33-

action to recover the property transferred or its value, a court must evaluate the two bases of

relief separately. *SKK Liquidation Trust v. Green & Green, LPA (In re Spinnaker Indus.,*

*Inc.)*, 328 B.R. 755, 764 (Bankr. S.D. Ohio 2005); *Barber v. McCord Auto Supply, Inc. (In*

*re Pearson Indus., Inc.)*, 178 B.R. 753, 759 (Bankr. C.D. Ill. 1995). "Once the whole transfer

has been pulled into the estate, the money is distributed according to the priorities established

by the Code and the debtor's own commitments." *FBN Food Servs.*, 82 F.3d at 1396.

The Bankruptcy Code does not define "transferee." The Seventh Circuit, however,

explains that a "transferee" has "dominion over the money or other asset, the right to put the

money to one's own purposes." *Bonded Fin. Servs.*, 838 F.2d at 893. The "initial" transferee

is the first entity to have such a dominion or right. *Kepler v. Aetna Fin. Co. (In re Ausman*

*Jewelers, Inc.)*, 177 B.R. 282, 286 (Bankr. W.D. Wis. 1995). The Defendants admit that

Frank, Jr. was the initial transferee of the ICS, LLC interest or, alternatively, that he was the

beneficiary of the transfer of assets from ICS, LLC to ICS, Inc. (*See* 7056-1 statement Ex.

H ¶ 33.) Further, the Defendants admit that ICS, Inc. is the successor in interest to ICS, LLC

and, to the extent that it holds any of the assets of ICS, LLC, of which Carl was a fifty

percent owner, that ICS, Inc. is the mediate transferee of the initial transferee. (*Id.* ¶ 34.)

The Court must first make a determination whether the transfer by Carl of his interest

in ICS, LLC to Frank, Jr. was fraudulent under § 548(a) and, therefore, avoidable before the

Trustee can recover that transfer pursuant to § 550(a). Section 550(a) is a secondary cause

of action after a trustee has prevailed pursuant to the avoidance sections of the Bankruptcy

Code. *Santee v. Nw. Nat'l Bank (In re Mako, Inc.)*, 127 B.R. 471, 473 (Bankr. E.D. Okla.

1991). "Section 550(a) stands as a recovery statute only and not as a primary avoidance basis

-34-

for an action, as it will only survive when coupled with the transfer avoidance sections of the Code." *Id.* Because material issues of fact exist regarding whether the transfer of Carl's interest in ICS, LLC to Frank, Jr. was fraudulent under § 548(a), the determination of whether that transfer can be recovered under § 550(a) is premature at this stage of the proceedings. Hence, the Trustee has not demonstrated that he is entitled to judgment as a matter of law with respect to Count II of the complaint. Accordingly, the Court denies the Trustee's motion for summary judgment under Count II of the complaint.

### 3.    Count III: 740 ILCS 160/6

In Count III of the complaint, the Trustee seeks to avoid the alleged fraudulent transfer of Carl's interest in ICS, LLC to Frank, Jr. pursuant to Section 6 of the Illinois Uniform Fraudulent Transfer Act (the "UFTA"), 740 ILCS 160/6. (7056-1 statement Ex. E at 7.) The Trustee contends that at the time of the transfer, Carl was involved in litigation with Mountbatten (*Id.* ¶ 38.) and that the transfer was for little or no consideration (*Id.* ¶ 39.) As such, the Trustee alleges that the transfer was a fraudulent conveyance under Illinois law. (*Id.*)

Section 6 of the UFTA pertains only to claims arising before an alleged fraudulent transfer and provides as follows:

> § 6. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

-35-

> (b)  A transfer made by a debtor is fraudulent as to a creditor
> whose claim arose before the transfer was made if the transfer
> was made to an insider for an antecedent debt, the debtor was
> insolvent at that time, and the insider had reasonable cause to
> believe that the debtor was insolvent.

740 ILCS 160/6.[19]

11 U.S.C. § 544(b)(1) expressly authorizes a trustee to avoid a transfer voidable

under applicable state law, although the Trustee in the matter at bar did not specifically assert

as much in his complaint.  Section 544(b)(1) provides in pertinent part as follows:

> [T]he trustee may avoid any transfer of an interest of the
> debtor in property . . . that is voidable under applicable law by
> a creditor holding an unsecured claim that is allowable under
> section 502 of this title or that is not allowable only under
> section 502(e) of this title.

11 U.S.C. § 544(b)(1).  In a case under § 544(b)(1), the trustee has the rights of an unsecured

creditor to avoid transactions that can be avoided by such creditor under state law.  *Leibowitz*

*v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*, 139 F.3d 574, 576-77 (7th Cir.

1998).  The trustee need not identify the creditor, as long as an unsecured creditor exists.  *Id.*

at 577; *In re Leonard*, 125 F.3d 543, 544 (7th Cir. 1997).  The transaction can be avoided

completely even if the trustee cannot produce creditors whose liens total more than the value

of the property.  *Leonard*, 125 F.3d at 544-45.

In the matter at bar, the Trustee has demonstrated, and the Defendants do not dispute,

that Mountbatten is a creditor of Carl's estate and that Mountbatten holds an unsecured claim

allowable under 11 U.S.C. § 502.  (7056-1 statement Ex. H ¶ 37.)  In addition, it is

---

[19]  The Trustee does not specify in his complaint whether he is seeking relief under
subsection (a) or (b) of § 160/6.

-36-

undisputed that Mountbatten's claim against Carl arose prior to the transfer of his interest in

ICS, LLC to Frank, Jr. (*Id.* ¶ 38.) Indeed, at the time of the sale of the ICS, LLC

membership interest to Frank, Jr., Carl was involved in litigation with Mountbatten. (*Id.*)

Accordingly, the Trustee may proceed against the Defendants under state law.

Section 6 of the UFTA is analogous to 11 U.S.C. § 548(a)(2).[20] *Martino v. Edison*

*Worldwide Capital (In re Randy)*, 189 B.R. 425, 443 (Bankr. N.D. Ill. 1995). "Because the

provisions of the UFTA parallel § 548 of the Bankruptcy Code, findings made under the

Bankruptcy Code are applicable to actions under the UFTA." *Levit v. Spatz (In re Spatz)*,

222 B.R. 157, 164 (N.D. Ill. 1998); *see also Image Worldwide*, 139 F.3d at 577 (finding that

because the Illinois UFTA is a uniform act which has derived phrases from § 548, the court

may look to cases decided under § 548, as well as cases interpreting other states' versions

of the UFTA, for assistance).

The elements of a cause of action under § 6(a) of the UFTA are: (1) a transfer was

made by the debtor; (2) the debtor made the transfer without receiving a reasonably

equivalent value in exchange for the transferred property; and (3) the debtor either was

insolvent at the time of the transfer or became insolvent as a result of the transfer. *Creditors'*

*Comm. v. Jumer (In re Jumer's Castle Lodge, Inc.)*, 329 B.R. 837, 842 (Bankr. C.D. Ill.

2005); *Daley v. Chang (In re Joy Recovery Tech. Corp.)*, 286 B.R. 54, 77 (Bankr. N.D. Ill.

2002); *In re Liquidation of MedCare HMO, Inc.*, 689 N.E.2d 374, 380 (Ill. App. Ct. 1997);

---

[20] An important difference between § 548 and the UFTA is that § 548 authorizes avoidance of transfers made within one year before the bankruptcy filing. 11 U.S.C. § 548(a). Causes of action for fraudulent conveyances can be brought under the UFTA, however, within four years after the transfer was made. 740 ILCS 160/10(a).

*Falcon v. Thomas*, 629 N.E.2d 789, 795 (Ill. App. Ct. 1994). Intent is not an element under § 160/6(a). *Nostalgia Network, Inc. v. Lockwood*, 315 F.3d 717, 719 (7th Cir. 2002).

What constitutes "reasonably equivalent value" for purposes of the UFTA has not been defined by Illinois case law. The Illinois Supreme Court, in discussing a prior statute, stated that one of the necessary elements to establish a fraudulent conveyance is that "there must be a transfer made for no or inadequate consideration[.]" *Gendron v. Chi. & N.W. Transp. Co.*, 564 N.E.2d 1207, 1215 (Ill. 1990); *see also Image Worldwide*, 139 F.3d at 577 (discussing Illinois's interpretation of "reasonably equivalent value"); *Regan v. Ivanelli*, 617 N.E.2d 808, 814 (Ill. App. Ct. 1993) (*citing Gendron*) .

In determining whether reasonably equivalent value was received under the UFTA, courts should consider how that phrase has been construed under the Bankruptcy Code. *Image Worldwide*, 139 F.3d at 577. The Code does not define the term "reasonably equivalent value." Whether "reasonably equivalent value" has been given is a question of fact. *Id.* at 576; *Daley v. Chang (In re Joy Recovery Tech. Corp.)*, 257 B.R. 253, 268 (Bankr. N.D. Ill. 2001); *Official Comm. of Unsecured Creditors v. Pedersen & Houpt (In re Crystal Med. Prods., Inc.)*, 240 B.R. 290, 300 (Bankr. N.D. Ill. 1999). The Seventh Circuit has recognized that there is no fixed formula for determining reasonable equivalence. *Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997). That determination will depend on all of the facts of each case. *Id.* Several factors that have been utilized to determine reasonably equivalent value include: (1) whether the value of what was transferred is equal to the value of what was received; (2) the market value of what was transferred and received; (3) whether the transaction took place at arm's length; and (4) the good faith of the

·38·

transferee. *Id.*; *Grigsby v. Carmell (In re Apex Auto. Warehouse, L.P.)*, 238 B.R. 758, 773 (Bankr. N.D. Ill. 1999). "Reasonably equivalent value is measured at the time of the transfer." *Berland v. Mussa (In re Mussa)*, 215 B.R. 158, 172 (Bankr. N.D. Ill. 1997). Nominal consideration is inadequate to satisfy the reasonably equivalent value standard. *Image Worldwide*, 139 F.3d at 580.

The UFTA provides that "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." 740 ILCS 160/3(a). This definition of insolvency mirrors the balance-sheet test for insolvency under the Bankruptcy Code. 11 U.S.C. § 101(32). The UFTA also provides that "[a] debtor who is generally not paying his debts as they become due is presumed to be insolvent." 740 ILCS 160/3(b).

Under § 160/6(b) of the UFTA, the elements of the cause of action are: (1) the creditor's claim arose before the transfer; (2) the debtor made the transfer to an insider for an antecedent debt; (3) the debtor was insolvent at the time of the transfer; and (4) the insider had reasonable cause to believe that the debtor was insolvent. 740 ILCS 160/6(b). An "insider" is defined by the UFTA to include a relative of a debtor. *See* 740 ILCS 160/2(g)(2)(A).

The Court finds that there are material issues of fact that preclude the entry of summary judgment in favor of the Trustee under Count III of the complaint. Specifically, the Defendants dispute the following material issues of fact: (1) that the only consideration for the transfer of Carl's interest in ICS, LLC was $500.00; (2) that the documents relating to the transfer were back-dated to June 2002; (3) that the transfer of Carl's ICS, LLC interest was undisclosed at the time of the transfer; (4) that the transfer was for a substantial portion

-39-

of Carl's assets; (5) that the transfer was given in exchange for *de minimus* value not reasonably equivalent to the value of the ICS, LLC interest; (6) that the equity indicated in the financial statements and tax returns of ICS, LLC properly reflect the members' interest; and (7) that the transfer was made with intent to hinder, delay, or defraud creditors.

Thus, the Court finds that the Trustee has failed to demonstrate that there are no material issues of disputed fact and that he is entitled to judgment as a matter of law. Therefore, the Court denies the Trustee's motion with respect to Count III of the complaint.

In sum, the Court denies the motion for summary judgment under Counts I, II, and III of the complaint. A pretrial conference is set for February 24, 2006 at 10:00 a.m. in Courtroom 2000, 505 North County Farm Road, Wheaton, Illinois.

## V. **CONCLUSION**

For the foregoing reasons, the Court denies the Trustee's motion for summary judgment under Counts I, II, and III of the complaint. However, the Court narrows the issues for trial under Rule 56(d). A pretrial conference is set for February 24, 2006 at 10:00 a.m. in Courtroom 2000, 505 North County Farm Road, Wheaton, Illinois.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: 1/9/6

John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

## SERVICE LIST

### David R. Brown, Trustee v. Frank Szabo, Jr., Infrastructure Construction Services, LLC and Infrastructure Construction Services, Inc.

**Adversary No.  05 A 00988**

Sarah E. Cook, Esq.
William S. Piper, Esq.
McKenna Storer
666 Russell Court, Suite 303
Woodstock, IL 60098

Gregory J. Jordan, Esq.
Peter J. Schmidt, Esq.
Dykema, Gossett, Rooks, Pitts PLLC
10 S. Wacker Drive, Suite 2400
Chicago, IL 60606

David R. Brown, Esq.
Springer, Brown, Covey, Gaertner &
Davis
400 S. County Farm Road, Suite 330
Wheaton, IL 60187

Ira Bodenstein, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606